IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| PAUL R. C.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil No. 18-cv-2184-DGW[2] |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM and ORDER

**WILKERSON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final agency decision denying his application for Supplemental Security Income (SSI) Benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for SSI in October 2015, alleging a disability onset date of November 1, 2005. After holding an evidentiary hearing, an ALJ denied the application on November 28, 2017. (Tr. 13-22). The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final agency decision subject to judicial review. (Tr. 1). Plaintiff exhausted administrative remedies and filed a timely complaint with this Court.

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 16.

## Issues Raised by Plaintiff

Plaintiff argues that the RFC assessment is not supported by substantial evidence because:

1. The ALJ failed to discuss the testimony of a medical expert in connection with a prior application that he was limited to light exertion work.

2. The medical evidence demonstrates that plaintiff was limited to light work and was not capable of medium exertion work.

## Applicable Legal Standards

To qualify for SSI, a claimant must be disabled within the meaning of the applicable statutes.[3] Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to

---

[3] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The plaintiff bears the burden of proof at steps 1–4. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a

3

rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

The ALJ followed the five-step analytical framework described above. She determined that plaintiff had worked after the alleged onset date, but not at the level of substantial gainful activity. The ALJ found that plaintiff had severe impairments of degenerative disc disease; bilateral carpal tunnel syndrome; and osteoarthritis of both knees.

The ALJ found that plaintiff had the RFC to do medium work, limited to no climbing of ladders, ropes or scaffolds, and only occasional stooping, kneeling, crouching, and crawling.

Based on the testimony of a vocational expert, the ALJ found that plaintiff was not able to do his past work, but he was not disabled because he was able to do jobs at the medium exertional level that exist in significant numbers in the national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

### 1. Agency Forms

Plaintiff was born in 1960 and was 57 years old on the date of the ALJ's decision. (Tr. 218). He said he was disabled because of plantar fasciitis, arthritis in his knees, torn muscles in the right shoulder, carpal tunnel, high blood pressure,

borderline diabetes, and bulging discs in his lower back. He was 5' 11" tall and weighed 200 pounds. He said he stopped working on June 1, 2008, because of his condition. (Tr. 228-229). In a Work History Report filed in November 2015, he said he worked as a painter and drywaller from June 2004 through July 2010. (Tr. 236).

### 2. Denial of Prior Application

Plaintiff applied for SSI in March 2012, alleging disability as of April 20, 2011. In the decision denying that application, a different ALJ found he had severe impairments of hepatitis C, large ventral (abdominal) hernia, right shoulder impingement, and left knee arthritis. That ALJ concluded that he was capable of a limited range of light work. He relied in part on the testimony of a medical expert, Dr. Panek. (Tr. 117-129).

Dr. Panek testified that plaintiff's hepatitis C had not been treated. He had inflammation and enlargement of the liver and elevated liver enzymes. His hernia limited the amount of weight he could lift. He had right shoulder impingement and was limited to only frequent reaching in all directions with the right arm. (Tr. 65-67).

The Appeals Council denied plaintiff's request for review of the denial of the prior application in September 2015. (Tr. 134). The present application was filed about 10 days later.

### 3. Evidentiary Hearing on the Present Application

Plaintiff was represented by an attorney at the hearing in August 2017. (Tr. 29).

Plaintiff testified that he did painting and drywalling work from 2004 to 2010, although this work does not show up on his social security earnings records. He worked an average of 6 hours or more a day. He stopped because his "body just started giving out." (Tr. 36-37).

The only prescription plaintiff was taking was for blood pressure. (Tr. 42).

Plaintiff testified that back pain limited his activities. He spent about 3/4 of the day in a recliner. Carpal tunnel affected his ability to grip and his sleep. (Tr. 44-45). He said a doctor wanted to give him an injection, but he couldn't get it because of a lack of state funding.[4]

### 4. Relevant Medical Records

Plaintiff received primary healthcare at Southern Illinois Healthcare Foundation. The records begin in January 2015. Plaintiff was seen in January 2015 with a chief complaint of "Hepatitis C and Lack of Sleep." He was being followed for high blood pressure and complained of chronic back pain. The nurse practitioner told him he would have to see his physician, Dr. Gebauer, for pain management. Physical exam was normal. (Tr. 295-297). He saw Dr. Gebauer in March. Physical exam was again normal. He ambulated normally and motor strength and tone were normal. He complained of anxiety and depression and identified "trouble at work" as a factor. (Tr. 292-295). He was seen again in April for follow-up of high blood pressure and anxiety. (Tr. 290-292).

Plaintiff did not go back to his doctor's office until September. That visit was only for a hepatitis A shot. (Tr. 289). He returned in December 2015 and

---

[4] The medical records indicate that plaintiff was covered by Illinois Medicaid.

was seen by Dr. Stacy Jefferson. He told her that he had 3 bulging discs in his back and carpal tunnel syndrome. Physical exam was normal except for loss of sensation and tingling in the hands with positive Phalen's and Tinel's signs. (Tr. 287-289).

Later in December 2015, Dr. Pai wrote that he was cleared of the hepatitis C virus and was completely asymptomatic. (Tr. 311).

In February 2016, Dr. Vittal Chapa did a consultative exam. The exam was normal except for positive Tinel's sign at the left wrist. He was not taking any pain medication. He walked normally. He had a full range of motion of the lumbosacral spine with no muscle spasms. Straight leg raising was negative. There was an MRI report from 2014 attached to Dr. Chapa's report. This showed moderate spondylosis with facet arthropathy. There were bulging discs at L2-3, L3-4, and L4-5. (Tr. 313-318).

Plaintiff saw Dr. Jefferson in February 2016 for excessive urination and rectal bleeding. In the review of systems, he reported no muscle aches, weakness, or joint pain. (Tr. 345-348). He was not seen again until June 2016, when he told Dr. Jefferson that he "desires disability" and had been trying to get disability for over 5 years. He complained of bilateral back pain and wanted a referral to an orthopedist "to be placed on disability for his back." On exam, he had no pain with palpation of the back, but he said he had non-radiating pain with movement. His gait and station were normal. The doctor recommended aquatic therapy. (Tr. 343-345). Four months later, plaintiff returned to Dr. Jefferson stating that his lawyer wanted a new MRI and a statement from a specialist for his disability claim.

Plaintiff said his back pain had not changed and he had radiculopathy. On exam, he was "healthy appearing" and in no apparent distress. He had mild tenderness of the left knee. Gait was normal. There were no findings related to his back. Dr. Jefferson wrote that he was "capable of completing various jobs" and she would not do the paperwork for disability. She ordered an MRI and said she would compare it to the earlier one and refer him to a specialist if his symptoms progressed. She also noted that there was a "concern" for arthritis in his knees and prescribed Mobic, a nonsteroidal anti-inflammatory drug. (Tr. 340-343).

In November 2016, an MRI of the lumbar spine showed mild bulging at L2-3, disc protrusions at L4-5 and L5-S1 with no nerve compression and moderate arthritis. (Tr. 354). A copy of the MRI report is in Dr. Jefferson's records.

In December 2016, plaintiff saw Dr. Jefferson for follow-up on quitting smoking. He said his back pain was unchanged and Mobic did not help. Physical exam was normal. She referred him to pain management for an injection. (Tr. 338-340). He came back in January 2017 for follow up on his blood pressure. His back pain was unchanged, but he had not been taking any pain medication. He wanted to restart Mobic. Exam was normal. (Tr. 335-338). He saw Dr. Jefferson in April 2017 to have her fill out "disability paperwork." He said his back pain had not changed but it took longer for his back to feel normal. He requested a back brace. He said he also had prior knee problems. Plaintiff had filled out the paperwork, but Dr. Jefferson wrote that she was unable to sign it because he was not disabled. (Tr. 333-335).

Dr. Jefferson wrote a letter stating that plaintiff had filled out "the attached

paperwork." The paperwork was a form to be used by a doctor to assess the patient's ability to do work-related activities. Dr. Jefferson wrote that she was unable to make the assessment because most of his musculoskeletal issues "have been addressed prior to meeting him." She stated that, while pain and limited range of motion limited his activities of daily living, he "continued to be a contributing member of the community although he is in daily discomfort." (Tr. 321-324).

Plaintiff returned to Southern Illinois Healthcare in June 2017 but was seen by a different doctor. He said he had left knee pain with a frequent sense of locking and giving way. He was wearing a neoprene brace on his knee, but his gait was normal. He had normal motor strength and tone. The doctor ordered x-rays of the knee and physical therapy. (Tr. 330-332). There are no physical therapy records in the transcript.

In June 2017, plaintiff saw Dr. Naseer, a pain management specialist. She wrote that he complained of pain in the low back going down the right leg, consistent with L5-S1 radiculopathy. She intended to schedule him for a lumbar transforaminal epidural steroid injection. There are no more records from this doctor. (Tr. 381).

### 5. State Agency Consultants' Opinions

In February 2016, Dr. Pardo assessed plaintiff's RFC based on a review of the record. He concluded that plaintiff could do medium exertion work limited to occasional climbing of ladders, ropes, and scaffolds; and frequent stooping and crouching. (Tr. 95-96).

In June 2016, a second state agency consultant reviewed the record and agreed with Dr. Pardo's assessment. (Tr. 108-109).

## Analysis

Plaintiff was in the "advanced age" category when he filed the present application. (Tr. 20). If he were limited to light work with no transferrable skills, he would be deemed disabled at that age under the Medical-Vocational Guidelines ("Grids") 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 2. Accordingly, the gist of plaintiff's argument is that the record does not support the ALJ's finding that he is capable of medium work. Medium work involves occasional lifting of up to 50 pounds and frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. §404.1567(c)

In the prior denial, the ALJ found that plaintiff was limited to light work based in large part on the testimony of a medical expert, Dr. Panek. Plaintiff argues that the ALJ on this go around ignored Dr. Panek's testimony.

It is plaintiff who is ignoring the substance of Dr. Panek's testimony. She testified that plaintiff was limited to light work because of untreated hepatitis C, an abdominal hernia which limited the amount of weight he could lift, and a right shoulder impingement. (Tr. 65-67). Plaintiff's hepatitis C is now cured, and there is no mention of a hernia or right shoulder impingement in the current medical records. Plaintiff now claims to be disabled because of back and knee pain. Plaintiff's medical situation has changed since Dr. Panek reviewed his medical records in 2014, and her testimony is not relevant to the current claim.

Plaintiff argues that the medical evidence does not support the conclusion

that he is capable of sustaining medium work. To the extent that he relies on his own subjective statements, his argument is not persuasive. The ALJ determined that his statements are not believable, and plaintiff has not challenged that determination. Plaintiff's selective review of the medical records is not persuasive either. He ignores the many physical exams which showed normal findings. Plaintiff does have a point, though, when it comes to the MRI reports.

Lumbar MRIs were done in 2014 and November 2016. (Tr. 313-318, 354). When she ordered the 2016 MRI, Dr. Jefferson wrote that she would compare it to the earlier one and refer him to a specialist if his symptoms progressed. When he returned in December 2016, Dr. Jefferson did refer him to pain management for an injection.

The ALJ gave "significant weight" to the state agency consultants' opinions that plaintiff could do medium exertion work. Those opinions were rendered before the November 2016 MRI. Dr. Jefferson referred him to pain management after the MRI was done. The pain management doctor said his complaint was consistent with L5-S1 radiculopathy and recommended a lumbar transforaminal epidural steroid injection which plaintiff was unable to get because of a Medicaid issue. The ALJ did not mention the visit with the pain management specialist.

Dr. Jefferson was only doctor who reviewed the 2016 MRI. She declined to fill out the disability form and wrote in an office note that plaintiff was capable of "various jobs." That observation is of little help because if plaintiff is capable of only light exertion work, he would be deemed disabled because of his age.

The ALJ and the Commissioner are not medical experts qualified to interpret

11

radiology reports. "ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves." *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018). In two recent cases, the Seventh Circuit has held that the ALJ erred in determining for himself the significance of MRI results, rather than seeking the opinion of a medical expert. *Akin v. Berryhill*, 887 F.3d 314, 318 (7th Cir. 2018); *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018). *Akin* is particularly applicable; "But, without an expert opinion interpreting the MRI results in the record, the ALJ was not qualified to conclude that the MRI results were 'consistent' with his assessment." *Akin*, 887 F.3d at 317.

Of course, this Court is not a medical expert qualified to determine the significance of radiology reports either, and the above discussion of the report is not intended to suggest otherwise.

The Commissioner argues that the ALJ adequately considered the MRIs because she accurately noted that it showed only "moderate" findings. Doc. 27, pp. 9, 12. This argument misses the point. It is true that the radiology report used the term "moderate," but the ALJ was not qualified to determine for herself whether the 2016 MRI was consistent with the ability to do medium exertion work. Without the input of a medical expert, the ALJ's conclusion is not supported by the record. The Commissioner also argues that the many normal physical exams support the ALJ's decision and, in effect, "outweigh" the MRI findings. But that is the sort of medical conclusion that the ALJ, the Commissioner, and his lawyers are not qualified to draw.

The ALJ 's error with regard to the 2016 MRI requires remand. An ALJ's

decision must be supported by substantial evidence, and the ALJ's discussion of the evidence must be sufficient to "provide a 'logical bridge' between the evidence and his conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009), internal citations omitted. The Court must conclude that the ALJ failed to build the requisite logical bridge here. Remand is required where, as here, the decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012).

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff was disabled during the relevant period or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying plaintiff's application for social security disability benefits is **REVERSED and REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE:      January 31, 2020.**

**DONALD G. WILKERSON**
**U.S. MAGISTRATE JUDGE**

13